AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>7636 East Thomas Road, Scottsdale, Arizona 85251. | Case No.   23-5110MB |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before ___April 3, 2023___ *(not to exceed 14 days)*
☒ in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona.</u>

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for _30_ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: March 20, 2023 at 8:24 pm _____
*Judge's signature*

City and state: Phoenix, Arizona_____       <u>Honorable Deborah M. Fine, U.S. Magistrate Judge</u>
                                                      *Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is 7636 East Thomas Road, Scottsdale, Arizona 85251. The property is a blue in color brick single family dwelling with a yellow front door. The numbers "7636" are affixed directly next to the front door.

The black Lincoln Navigator bearing California registration 8UHC580 registered to EAN Holdings.

A black 2011 Cadillac CTS bearing Arizona registration 56A99B registered to Alexis Denise Arrington.

## ATTACHMENT B

*Property to be seized*

1.     Any illegal controlled substances;

2.     Books, records, receipts, notes, ledgers, invoices, and any other documentation related to the manufacture, importation, transportation, ordering, purchase, sale, or distribution of controlled substances;

3.     Drug ledgers, drug customer lists, drug inventory lists, weights and prices, dealer lists, criminal associates lists, or any notes containing the individual names of such persons, telephone numbers or addresses of these customers or dealers, and any records of accounts receivable, money paid or received, drugs supplied or received, cash received, or to be paid for controlled substances, or intended to be paid for controlled substances;

4.     Records relating to the receipt, transportation, deposit, transfer, or distribution of money, including but not limited to, direct deposit confirmations, wire transfers, money orders, cashier's checks, check stubs, PayPal or other electronic money transfer services, check or money order purchase receipts, account statements, and any other records reflecting the receipt, deposit, or transfer of money;

5.     United States currency, foreign currency, financial instruments, negotiable instruments, jewelry, precious metals, stocks, bonds, money wrappers, and receipts or documents regarding purchases of real or personal property;

6.     Safe deposit box keys, storage locker keys, safes, and related secure storage devices, and documents relating to the rental or ownership of such units;

7.     Currency counters;

8.     Indicia of occupancy, residency, rental, ownership, or use of the Subject Premises and any vehicles found thereon during the execution of the warrant, including, utility and telephone bills, canceled envelopes, rental, purchase or lease agreements,

identification documents, keys, records of real estate transactions, vehicle titles and registration, and vehicle maintenance records;

9.      Photographs, including still photos, negatives, slides, videotapes, and films, in particular those showing co-conspirators, criminal associates, U.S. currency, real and personal property, firearms, or controlled substances;

10.     Paraphernalia related to the importation, transportation, use, or distribution of controlled substances or proceeds from the sale of controlled substances, including materials commonly used for the clandestine shipment thereof, including but not limited to, scales, bottles, mixing bowls, spoons, grinders, cutting agents, cutting boards, baggies, knives/razors, plastic wrap/cellophane, tape, seals, boxes, packaging materials, scent masking agents, shipping labels, and storage containers;

11.     Firearms, ammunition, magazines, cases, boxes, holsters, slings, gun pieces, gun cleaning items or kits, ammunition belts, original box packaging, targets, expended pieces of lead, and records, receipts, or other paperwork showing the purchase, storage, disposition, or dominion and control over firearms and ammunition.

12.     Computers, cellular telephones, and other electronic devices to communicate with other drug traffickers and customers about drug-related activities through the use of telephone calls, text messages, email, chat rooms, social media, and other internet- and application-based communication forums. Moreover, drug traffickers commonly use other capabilities of computers and electronic devices to further their drug trafficking and money laundering activities.  Therefore, evidence related to drug trafficking activity and money laundering activity is likely to be found on electronic storage media found at the **Subject Premises**, as further described below.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

|  |  |
|---|---|
| In the Matter of the Search of<br>7636 East Thomas Road, Scottsdale, Arizona 85251. | Case No.   23-5110MB |

## APPLICATION FOR A SEARCH WARRANT

I, Jacquelyn K. Czopek, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

### As further described in Attachment A

located in the District of Arizona, there is now concealed:

### As set forth in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

□ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | Possess with Intent to Distribute Controlled Substance |
| 21 U.S.C. § 846 | Conspiracy to Possess with Intent to Distribute a Controlled Substance |

The application is based on these facts:

### See attached Affidavit of Special Agent Jacquelyn K. Czopek

☒ Continued on the attached sheet.

□ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA D. Matthew Conti

Digitally signed by DAVID CONTI
Date: 2023.03.20 20:97:3

_Applicant's Signature_

Jacquelyn K. Czopek, Drug Enforcement Administration
_Printed name and title_

Sworn to telephonically and signed electronically.

Date:  March 20, 2023 at 8:24 pm

_Judge's signature_

City and state: Phoenix, Arizona

Honorable Deborah M. Fine, U.S. Magistrate Judge
_Printed name and title_

Type text here

## ATTACHMENT A

*Property to be searched*

The property to be searched is 7636 East Thomas Road, Scottsdale, Arizona 85251. ("the property")
The property is a blue in color brick single family dwelling with a yellow front door. The numbers "7636" are affixed directly next to the front door.

The black Lincoln Navigator bearing California registration 8UHC580 registered to EAN Holdings.  If on the property / DMF

A black 2011 Cadillac CTS bearing Arizona registration 56A99B registered to Alexis Denise Arrington. If on the property  / DMF

## ATTACHMENT B

*Property to be seized*

1.      Any illegal controlled substances;

2.      Books, records, receipts, notes, ledgers, invoices, and any other documentation related to the manufacture, importation, transportation, ordering, purchase, sale, or distribution of controlled substances;

3.      Drug ledgers, drug customer lists, drug inventory lists, weights and prices, dealer lists, criminal associates lists, or any notes containing the individual names of such persons, telephone numbers or addresses of these customers or dealers, and any records of accounts receivable, money paid or received, drugs supplied or received, cash received, or to be paid for controlled substances, or intended to be paid for controlled substances;

4.      Records relating to the receipt, transportation, deposit, transfer, or distribution of money, including but not limited to, direct deposit confirmations, wire transfers, money orders, cashier's checks, check stubs, PayPal or other electronic money transfer services, check or money order purchase receipts, account statements, and any other records reflecting the receipt, deposit, or transfer of money;

5.      United States currency, foreign currency, financial instruments, negotiable instruments, jewelry, precious metals, stocks, bonds, money wrappers, and receipts or documents regarding purchases of real or personal property;

6.      Safe deposit box keys, storage locker keys, safes, and related secure storage devices, and documents relating to the rental or ownership of such units;

7.      Currency counters;

8.      Indicia of occupancy, residency, rental, ownership, or use of the Subject Premises and any vehicles found thereon during the execution of the warrant, including, utility and telephone bills, canceled envelopes, rental, purchase or lease agreements,

identification documents, keys, records of real estate transactions, vehicle titles and registration, and vehicle maintenance records;

9.      Photographs, including still photos, negatives, slides, videotapes, and films, in particular those showing co-conspirators, criminal associates, U.S. currency, real and personal property, firearms, or controlled substances;

10.      Paraphernalia related to the importation, transportation, use, or distribution of controlled substances or proceeds from the sale of controlled substances, including materials commonly used for the clandestine shipment thereof, including but not limited to, scales, bottles, mixing bowls, spoons, grinders, cutting agents, cutting boards, baggies, knives/razors, plastic wrap/cellophane, tape, seals, boxes, packaging materials, scent masking agents, shipping labels, and storage containers;

11.      Firearms, ammunition, magazines, cases, boxes, holsters, slings, gun pieces, gun cleaning items or kits, ammunition belts, original box packaging, targets, expended pieces of lead, and records, receipts, or other paperwork showing the purchase, storage, disposition, or dominion and control over firearms and ammunition.

12.      Computers, cellular telephones, and other electronic devices to communicate with other drug traffickers and customers about drug-related activities through the use of telephone calls, text messages, email, chat rooms, social media, and other internet- and application-based communication forums. Moreover, drug traffickers commonly use other capabilities of computers and electronic devices to further their drug trafficking and money laundering activities.  Therefore, evidence related to drug trafficking activity and money laundering activity is likely to be found on electronic storage media found at the **Subject Premises**, as further described below.

2

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Your Affiant, Jacquelyn K. Czopek, being first duly sworn, hereby deposes and states as follows:

## I.   INTRODUCTION AND AGENT BACKGROUND

1.      Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises located at 7636 East Thomas Road, Scottsdale, Arizona 85251 (hereinafter the "**Subject Premises**"), as further described in Attachment A, in order to search for and seize the items outlined in Attachment B, which represent evidence, fruits, and/or instrumentalities of the criminal violations further described below.

2.      I have been employed as a Special Agent with the United States Drug Enforcement Administration (DEA) since June 2010.  I am a law enforcement officer of the United States and is empowered by law to conduct investigations, make arrests, and execute search warrants.  I am currently assigned to the DEA Phoenix, Arizona Field Office Strike Force Group 2 (SF2).

3.      SF2 conducts narcotics investigations into trafficking of controlled substances and specializes in the detection, penetration, and dismantlement of drug trafficking organizations, often coordinated with the Federal Bureau of Investigation (FBI), the Department of Homeland Security (DHS)/Immigration and Customs Enforcement (ICE)/Homeland Security Investigations (HSI), the United States Postal Inspectors Service (USPIS), and state/local law enforcement personnel designated as Task Force Officers (TFOs).  I am also a cross-certified Federal Peace Officer with the Maricopa County Sheriff's Office, in accordance with A.R.S. § 13-3875, and may exercise all law enforcement powers of an Arizona Peace Officer.

4.      I have a Bachelor's of Science (B.S.) degree in Psychology from Augustana College in Rock Island, Illinois, and a Master's Degree in Criminal Justice from Lewis

University in Romeoville, Illinois. I have completed the DEA's Basic Agent Training. The curriculum for the nineteen-week course includes federal law regarding drug-related offenses and criminal investigations, drug identification, physical surveillance, undercover negotiations, and electronic surveillance.

5.      By virtue of my employment as a Special Agent, I have performed various tasks, including investigating the distribution of federally controlled substances such as marijuana, methamphetamine, heroin, cocaine, fentanyl, Oxycodone, Hydrocodone, Alprazolam (Xanax) and investigated organizations manufacturing methamphetamine. I have participated in both physical and electronic surveillance, which has led to or assisted in the seizure of United States Currency (USC), distribution quantities of marijuana, heroin, cocaine, methamphetamine, fentanyl, Oxycodone, Hydrocodone, Tramadol, Promethazine with Codeine, chemical precursors, drug ledgers, drug-related paraphernalia, and other documents and records used to facilitate the activities of drug-trafficking organizations (DTOs). I have participated in many aspects of drug investigations, including the execution of multiple search warrants, seizure warrants, Grand Jury subpoenas, and ex-parte orders for evidence of drug-related offenses, including federally controlled substances, drug-related ledgers, paraphernalia, records, and evidence of money laundering crimes through the placement and layering of large amounts of U.S. currency.

6.      In the course of conducting drug investigations, I have interviewed confidential informants (CIs), cooperating defendants (CDs), sources of information (SOIs), and people involved in the distribution of illegal and diverted drugs and the movement of proceeds from illegal drugs. I have also been an affiant for cellular telephone tracking orders, mobile trafficking devices (MTDs), search warrants, seizure warrants, and federal complaints.

7.      In the course of conducting drug investigations, I have personally interviewed confidential informants and persons involved in the distribution of drugs. In

addition, I provided surveillance in support of state and federal investigations that used court-authorized interceptions of wire and electronic communications. I have also consulted with other experienced investigators concerning the practices of drug trafficking organizations and the strategies utilized to investigate them.

8.      The statements contained in this Affidavit are based on information derived from your Affiant's personal knowledge, training and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; information provided by a confidential source; analysis of public records; controlled purchases of drugs; analysis of social media information; analysis of telephone records; intercepted communications; and analysis of financial records.

9.      Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all of the relevant facts known to law enforcement officers.

**II.    PROBABLE CAUSE**

   **a.  Summary of Investigation.**

10.     I am currently involved in an investigation being focusing on a drug trafficking organization which is trafficking fentanyl and other drugs from Arizona to other states including Kansas. Based on this investigation, I believe that 7636 East Thomas Road, Scottsdale, Arizona ("the **Subject Premises**") is used by Curtis HINES ("HINES") and others to store and distribute fentanyl and other drugs.

   **b.  Identification of the Subject Premises**

11.     On January 25, 2023, at approximately 3:45 p.m., law enforcement officers established surveillance at a residence located on 12th Street in Phoenix, Arizona ("12th Street Residence"). Upon arrival, I observed a red Chevrolet sedan "the Chevrolet" parked in the driveway. At approximately 4:07 p.m., I observed a white Chrysler sedan "the

Chrysler" back out of the driveway and park on the street. The driver, later identified as David PACHECO ("PACHECO") based on a comparison to an Arizona driver's license photograph, exited the Chrysler and briefly spoke with the driver of the Chevrolet before returning to the Chrysler. At approximately 4:10 p.m., I observed the Chrysler depart the area of the 12th Street Residence while being followed by the Chevrolet.

12.    As the vehicles departed the 12th Street Residence, investigators established surveillance of the Chrysler and the Chevrolet. The vehicles traveled to and stopped at a nearby gas station before departing in tandem. Upon departing, investigators followed the vehicles to a small apartment complex located in the area of 3rd Avenue and West Forest Grove Avenue in Phoenix, Arizona ("Forest Grove Apartments") where they arrived at approximately 4: 24 p.m. Due to the small complex, officers were unable to obtain a visual of the vehicles.  At approximately 4:33 p.m., investigators observed the Chrysler and Chevrolet departing the Forest Grove Apartments while following a gray Toyota Camry ("the Camry").  As the vehicles traveled in tandem, investigators continued to surveil the vehicles, specifically following the Chrysler. While following the vehicles, investigators observed the three vehicles make several stops in unison including a Chevrolet gas station and a Seven- Eleven mini-mart located in central Phoenix. At approximately 5:35 p.m., investigators observed all three vehicles parked in tandem along a residential street near 78th Place and North Lane in Scottsdale, Arizona. At this time, investigators observed an unknown Hispanic male, later identified as Robby MENDOZA, who was believed to have exited the Camry standing near the Chevrolet and speaking with the driver. During this time, investigators did not see any other meeting or exchange involving the Chrysler. Approximately ten minutes later, all three vehicles once again departed in tandem.

13.    At approximately 5:50 p.m., I observed the Chrysler and Chevrolet arrive at the Circle K gas station located near Shea Boulevard and 89th Place in Scottsdale.  Upon arrival, investigators noted the Camry was not present. Investigators observed PACHECO

4

exit the Chrysler and enter the gas station before quickly returning to the Chrysler. At this time, the Chrysler and Chevrolet departed in tandem and investigators surveilled the vehicles.

14.     At approximately 6:00 p.m., investigators observed the Chrysler and Chevrolet arrive in a residential neighborhood near 110th Street and E. Sahuaro Street in Scottsdale. Soon after, investigators observed the Camry arrive in the area and all three vehicles relocated on a nearby street. Soon after, I drove past the area and observed PACHECO retrieving a large black bag from the opened trunk of the Chrysler. Soon after, investigators observed the Camry departing the area. At this time, the Chrysler was parked on the street unoccupied. Based on these observations, investigators believed the fentanyl pills were moved from the Chrysler and placed into the Camry.

15.     As the Camry traveled westbound on Shea Boulevard, Tempe Police Department Detectives attempted to conduct a traffic stop of the Camry. Officers activated their emergency lights and the Camry attempted to flee, but crashed into a civilian vehicle. Four occupants were observed fleeing from the Camry and investigators ultimately apprehended Jamal MOYAERT ("MOYAERT") and Robby MENDOZA ("MENDOZA"). During their arrest, MENDOZA was observed tossing a handgun, which was retrieved and secured by law enforcement. A search of the Camry resulted in the discovery of approximately 195,000 fentanyl pills located primarily in a large black bag, which matched the bag I observed taken from the Chrysler. A smaller portion of the pills were found within a backpack that was located in the Camry. Law enforcement officers also discovered a FN PS90 rifle and a Ruger revolver handgun, multiple firearm magazines and ammunition as well as approximately $12,940.00 in United States Currency (USC). During a post-arrest search of MOYAERT and MENDOZA, investigators located one white Apple iPhone 11 cellular telephone on MENDOZA's person, and one green Apple iPhone 13 cellular telephone and one blue Apple iPhone 11 cellular telephone on

5

MOYAERT's person. All three cellular telephones were seized by Tempe PD as evidence. On January 31, 2023, the Honorable Gregg Gibbons, Maricopa County Superior Court Judge, authorized a search warrant for the search of all three cellular telephones.

16. During the search of MOYAERT's green Apple iPhone 13 which utilized telephone number (480) 853-0171 ("MOYAERT phone"), investigators discovered multiple communications that took place on January 25, 2023 between the MOYAERT phone and a contact saved as "RAY" which was assigned telephone number (316) 227-7621 (7621 Telephone). The communications were drug related and involved the discussion of drug price and quantity as well the delivery of suspected fentanyl pills to RAY in Scottsdale, Arizona. Below is a summary of the communications and is not verbatim. The communications were written in English.

17. On January 25, 2023, at approximately 12:23 p.m., the MOYAERT phone sent the 7621 Telephone a text message saying, "this Chinaman." RAY, using the 7621 Telephone asked MOYAERT where he was trying to "link." MOYAERT responded, saying in an hour and that he got RAY at "40c." MOYAERT then asked if RAY wanted to meet him (MOYAERT) somewhere or if MOYAERT should "pull up" on RAY. RAY, using the 7621 Telephone, said "I'm have you pull up" and informed MOYAERT that he (RAY) got an "Airbnb" in Scottsdale. RAY told MOYAERT that he would "need 200." MOYAERT affirmed, saying that when he (MOYAERT) "got em" he would have him (RAY) send the "addy." Based on the above communications, I believe MOYAERT, referring to himself as "Chinaman" told RAY that he would sell RAY suspected fentanyl pills at "40c" which I believe to be code for forty cents per pill. MOYAERT then asked RAY if they should meet somewhere, or if MOYAERT should "pull up" a term meaning to come over. RAY responded, saying that he wanted MOYAERT to come over to his (RAY's) location, an Airbnb rental in Scottsdale, Arizona. RAY said he needed "200", a quantity believed to be 200,000 fentanyl pills. MOYAERT then affirmed, saying that once

6

he received them (suspected fentanyl pills), he would have RAY send the address of the AirBnb.

18.     At approximately 3:21 p.m., RAY, using the 7621 Telephone, sent the MOYAERT phone a text asking how they were "looking." MOYAERT responded, telling RAY he would be on his way in "10." At approximately 3:39 p.m., MOYAERT told RAY to send the "addy" and that he was "omw." RAY then sent the location of a residence located in the area of 111th St. and E. Mary Catherine Dr. in Scottdale, AZ ("RAY Residence.") MOYAERT responded, saying that he was "46 min out". At approximately 4:23 p.m., RAY, using the 7621 Telephone asked MOYAERT if he was close. MOYAERT responded, saying they had to stop somewhere and "we like 37" minutes away. At approximately 4:51 p.m., RAY sent MOYAERT a text saying to let him (RAY) know when MOYAERT was there and that RAY would "open up the garage." Approximately twenty minutes later, RAY, using the 7621 Telephone, asked if everything was "good." At approximately 5:53 p.m., MOYAERT responded, saying that he was pulling in and that it was far. At approximately 5:56 p.m., RAY, using the 7621 Telephone, said "call me" and told MOYAERT that he was at the mall and that he just got there and to give him "30" and he would be there. RAY then told MOYAERT that he tried to call him (MOYAERT). At approximately 6:00 p.m., MOYAERT said that his phone died and he as calling RAY. Telephone records indicate that at 6:00 p.m., the MOYAERT phone made a 54 second outgoing call to the 7621 Telephone.

19.     Based on the above communications in conjunction with the surveillance that occurred on January 25, 2023, I believe that at approximately 3:39 p.m., MOYAERT informed RAY that he was on his way and asked RAY to send the address to RAY's Residence. RAY then sent the address to the RAY Residence and said that he would open the garage upon MOYAERT's arrival, presumably to store the suspected fentanyl pills. Over the following two hours, RAY continued to question MOYAERT's location. At

7

approximately 5:53 p.m., MOYAERT informed RAY that he was arriving at RAY's Residence and RAY responded soon after, saying that he had just left and would return in approximately 30 minutes. Call records indicate that at this time, MOYAERT and RAY spoke briefly. Around this time during surveillance, investigators had noted that the Camry had separated from the Chevrolet and Chrysler. Investigators then followed the Chrysler and Chevrolet to the area of 110th St. and Sahuaro St. and soon after observed the Camry arrive. I believe the Camry traveled to RAY's Residence prior to the receipt of the fentanyl pills in the Camry. Once RAY informed MOYAERT that he was not home, I believe the Camry then left RAY's Residence and met with the Chrysler to receive the fentanyl pills. Soon after the Camry departed the area, while traveling away from RAY's Residence, Detectives attempted to conduct a traffic stop, ultimately leading to the arrest of MOYAERT and MENDOZA as well as the seizure of the 190,000 fentanyl pills.

20.     Based on the above communications, I believe the fentanyl pills which were seized on January 25, 2023 are the "200" (200,000) fentanyl pills in which RAY and MOYAERT discussed and coordinated through the 7621 Telephone. At approximately 6:44 p.m., which was after MOYAERT was arrested, RAY, using the 7621 Telephone, sent the MOYAERT phone a text saying that he was "down the street." At approximately 7:08 p.m., RAY sent a text asking what was up and then asked if he needed to come to MOYAERT. Telephone records further indicate that the 7621 Telephone attempted to call the MOYAERT phone at 6:28 p.m., 6:29 p.m., 7:07 p .m, and 7:09 p.m.; all which went unanswered.

21.     Investigators issued a subpoena to T-Mobile USA for the subscriber and toll records, as well as cellular phone information relative to the 7621 Telephone. Records indicate that 7621 Telephone is subscribed to James Williams and was activated on December 16, 2018.

22.     On March 13, 2023, United States District Court for the District of Arizona Magistrate Michael T. Morrisey authorized the initial disclosure of real-time cell site information from GPS on the 7621 Telephone for a period of 45 days. On March 14, 2023, investigators began receiving GPS information from the service provider for the 7621 Telephone. On this same date, at approximately 2:24 a.m., location information relating to the 7621 Telephone indicated that the 7621 Telephone was located in the greater Wichita, Kansas area. However, the location information provided by the service provider for the 7621 Telephone included a proximity radius of approximately 592 meters.

23.     On March 19, 2023, at approximately 1:27 p.m., the location information relating to the 7621 Telephone indicated the 7621 Telephone was at the Wichita Dwight D. Eisenhower National Airport in Wichita, Kansas ("Wichita Airport"). The location information provided by the service provider for the 7621 Telephone included a proximity radius of approximately 271 meters. The "7621 Telephone's location continued to indicate the 7621 Telephone was at the Wichita Airport until approximately 2:42 p.m. Soon after this time, the 7621 Telephone appeared to be powered off.  At approximately 3:57 p.m. on this same date, location information relating to the 7621 Telephone indicated the 7621 Telephone was located at the Dallas Forth Worth Airport in Dallas, Texas (Dallas Airport) and included a proximity radius of approximately 271 meters. The "7621 Telephone's" location continued to indicate the 7621 Telephone was at the Dallas Airport until approximately 5:27 p.m. Soon after this time, the 7621 Telephone appeared to be powered off. At approximately 7:42 p.m. on this same date, location information relating to the 7621 Telephone indicated that 7621 Telephone was located at the Phoenix Sky Harbor Airport in Phoenix, Arizona (Phoenix Airport) and included a proximity radius of approximately ranging from 400 meters to 4,000 meters. Law enforcement officers working at the Phoenix Airport identified Curtis HINES ("HINES") as a passenger on American Airlines flight

406 who arrived from Dallas Airport into Phoenix Airport on this date. Records further indicated that HINES utilized the 7621 Telephone as his point of contact.

24.     On March 20, 2023, the location information relating to the 7621 Telephone indicated that the 7621 Telephone was located in the area of Thomas Road and Miller Road in Scottsdale. Investigators established surveillance in the area on this date. At approximately 12:45 p.m., investigators observed a black male exit the residence located at 7636 E. Thomas Rd., Scottsdale, AZ (the **"Subject Premises"**) and enter a black Lincoln Navigator with California license plate 8UHC580 ("the Lincoln"). The Lincoln is registered to EAN Holdings. At this time, the driver matched the description of HINES. As the Lincoln departed the **Subject Premises**, a black Chrysler 300 ("the 300") was also observed departing the **Subject Premises** while occupied by one black male. Investigators established surveillance and approximately five minutes later, investigators observed the vehicles arrive at the LoLo's Chicken and Waffles located near Scottsdale Road and Earll Drive in Scottsdale. Soon after arriving, investigators observed the occupants of the Lincoln meet with the occupants of a white Mercedes sedan ("the Mercedes. While meeting in the parking lot, investigators observed an unknown Hispanic male (UHM) who arrived in the Mercedes hand the driver of the Lincoln, later identified as HINES, a black handgun. Soon after, the occupants of the Lincoln and Mercedes entered LoLo's Chicken and Waffles. As the males were entering the restaurant, investigators observed a female exit the backseat of the Lincoln carrying a large bag and she entered the restaurant.

25.     At approximately 2:10 p.m., investigators observed HINES exit the restaurant with the three UHMs. HINES and two of the UHMs were observed speaking at the trunk of the Mercedes. Investigators observed HINES briefly reach into the rear of the Mercedes and then a UHM handed HINES a small item. Soon after, investigators observed the three UHMs return to the Mercedes and leave the area. At this time, investigators observed HINES return to the restaurant. Quickly after, HINES exited the restaurant with

the female passenger later identified as Alexis ARRINGTON ("ARRINGTON"), an unknown black male (UBM), and a black male later identified as John REED ("REED"). REED and ARRINGTON entered the Lincoln and left at 2:23 p.m. Investigators observed HINES and the UBM walk to the 300 which had been parked in the parking lot and the 300 left the area. At this same time, investigators returned to the **Subject Premises** and observed a black 2011 Cadillac CTS bearing Arizona license plate 56A99B ("the Cadillac") parked in the driveway.   The Cadillac is registered to ARRINGTON. Approximately five minutes later, investigators followed the 300 to the **Subject Premises** and saw HINES exit and enter the **Subject Premises**. The 300 was observed leaving the area.

26.     At approximately 2:58 p.m., investigators observed the Lincoln arrive at the **Subject Premises** and park in the carport. Upon arrival, REED and ARRINGTON were observed exiting the Lincoln and entering the **Subject Premises**. At approximately 3:30 p.m., investigators observed the Mercedes arrive at the **Subject Premises** and all three UHMs got out of the car. The driver approached the front door and then walked towards the carport while the passengers were observed looking around. The driver waved the passengers toward the carport. At this time, investigators observed the rear passenger retrieve a large black bag from the rear of the Mercedes and the front passenger was observed carrying a second bag from the front passenger compartment of the Mercedes. All three UHMs then entered the **Subject Premises**. Approximately ten minutes later, investigators observed the Mercedes' front passenger exit the **Subject Premises** carrying a large box which was inside a clear bag.  The rear passenger was observed carrying a white bag. All three UHMs entered the Mercedes left the area. As the Mercedes left the area, investigators established surveillance and Gila River Police Department (GRPD) attempted to conduct a traffic stop for a traffic violation. As the GRPD officer activated his emergency lights, the Mercedes failed to stop and fled from the scene, weaving in and out

11

of oncoming traffic. Based on these observations, I believe the UHMs in the Mercedes brought an unknown quantity of illegal drugs to the **Subject Premises** and left with the drug proceeds.

27.     At approximately 4:00 p.m., investigators observed multiple occupants, including REED and HINES exit the **Subject Premises** carrying multiple bags. They placed bags and other items in the Lincoln and the Cadillac. At this time, investigators believe the occupants of the **Subject Premises** had been notified of the attempted traffic stop of the Mercedes and they were fleeing the **Subject Premises**. At approximately 4:04 p.m., investigators approached the occupants, identified as HINES, REED, Leroy SMITH ("SMITH") and ARRINGTON in the front yard and detained the individuals. The **Subject Premises** and the Lincoln and the Cadillac were cleared for safety precautions and currently secured by law enforcement personnel.  The Lincoln and the Cadillac are currently parked in the driveway of the **Subject Premises**.

   c.  **ITEMS TO BE SEIZED**

28.     Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found at the **Subject Premises**.

29.     Based on my training, education, and experience, and discussions with other trained law enforcement personnel, along with information provided by sources of information and confidential sources, your Affiant knows the following:

   a.     Drug traffickers often keep large amounts of United States currency on hand in order to maintain and finance their ongoing trafficking activities.  Traffickers commonly maintain such currency where they have ready access to it, such as in their homes and vehicles. It is also common for traffickers to possess drug proceeds and items purchased with proceeds in their homes and vehicles. Thus, it is common for currency,

12

expensive jewelry, precious metals, or financial instruments to be found in the possession of drug traffickers.

b.      Traffickers and persons involved in the manufacturing, distribution, and possession of controlled substances often possess firearms and other weapons, both legal and illegal, in order to protect their person, drugs, or the proceeds of drug transactions. Traffickers commonly maintain such firearms and weapons where they have ready access to them, such as on their person, in their homes, and in their vehicles. In addition, other firearm-related items, such as gun pieces, ammunition, gun cleaning items or kits, holsters, ammunition belts, original box packaging, targets, expended pieces of lead, photographs of firearms, and paperwork showing the purchase, storage, disposition, or dominion and control over firearms, ammunition, and related items are commonly possessed by drug traffickers along with their firearms.

c.      Traffickers often maintain paraphernalia for manufacturing and distributing controlled substances, including packaging materials, scales, and cutting agents.  Traffickers commonly maintain such paraphernalia at stash houses, in their homes, or in their vehicles.

d.      Traffickers often maintain paper records of their drug trafficking and money laundering activities.  Your Affiant knows that such records are commonly maintained for long periods of time and therefore are likely to be found at the **Subject Premises**.

e.      Drug traffickers commonly use computers, cellular telephones, and other electronic devices to communicate with other drug traffickers and customers about drug-related activities through the use of telephone calls, text messages, email, chat rooms, social media, and other internet- and application-based communication forums. Moreover, drug traffickers commonly use other capabilities of computers and electronic devices to further their drug trafficking and money laundering activities.  Therefore, evidence related

13

to drug trafficking activity and money laundering activity is likely to be found on electronic storage media found at the **Subject Premises**, as further described below.

30. In addition to items which may constitute evidence, fruits and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the **Subject Premises**, including rent receipts, utility bills, telephone bills, addressed mail, personal identification, keys, purchase receipts, sale receipts, photographs, vehicle pink slips, and vehicle registration.

## III. CONCLUSION

31. Your Affiant submits there is probable cause to believe that the items listed in Attachment B, which constitute evidence, fruits, and/or instrumentalities of violations of 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute a Controlled Substance) and 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance are likely to be found at the **Subject Premises**, which is further described in Attachment A.

Special Agent Jacquelyn K. Czopek
Drug Enforcement Administration

Subscribed electronically and sworn telephonically this 20th day of March, 2023. at 8:24 p.m.

HONORABLE DEBORAH M. FINE
United States Magistrate Judge

14